Alton BRACKETT, Jr.

v.

Olive LARRIVEE.

Supreme Judicial Court of Maine.

Argued June 6, 1989.

Decided July 7, 1989.

Joyce A. Wheeler, Peter Evans, Student Atty., Lawrence Freeman, Student Atty. (orally), Cumberland Legal Aid Clinic, University of Maine Law School, Portland, for plaintiff.

Frederick McGonagle (orally), Gorham, for defendant.

Before McKUSICK, C.J., and WATHEN, GLASSMAN, CLIFFORD, HORNBY and COLLINS, JJ.

McKUSICK, Chief Justice.

The parties to this appeal are brother and sister. When their father died intestate in 1975, they inherited as tenants in common some 70 acres of farmland together with farm buildings in the Gag Corner area of Gorham. It was not until 1986, however, that the sister first learned she was a half owner of the real estate. On this appeal the brother challenges only the factual finding of the Superior Court (Sagadahoc County,[1] *Brodrick, J.*) that when the brother paid all the taxes on the property from 1976 through 1987, he intended to make a gift to his sister of her half of those taxes. Concluding that the record evidence and the inferences that the Superior Court reasonably could draw therefrom support the court's finding, we affirm the judgment.

The brother, Alton Brackett, Jr., at the time of his father's death in 1975, was living with and caring for him at the family homestead on Route 237 on the property now owned by the parties as tenants in common. He has lived there nearly all his life. His sister, Olive Larrivee, lives around the corner on Winslow Road on land given to her by their father years earlier. The brother, with the aid of an attorney, became the administrator of his father's estate and paid all the bills. He continued to occupy the family homestead, treating all the property as his own. Over the years the parties have had a close relationship, with the brother visiting at his sister's house almost daily. Early in 1986 the sister suggested that the brother give her married son Gary Larrivee a house lot from the farmland, a suggestion that the brother rejected. At some point thereafter

---

1. Although Brackett filed his complaint in Cumberland County, the court (*Perkins, J.*) transferred the case to Sagadahoc county pursuant to 14 M.R.S.A. § 508 (Supp.1988).

the sister checked with the lawyer who had assisted the brother in settling their father's estate and, for the first time, discovered that by intestate succession she had become the owner of an undivided half interest in her father's real estate. On May 22, 1986, the brother and sister executed and delivered a deed conveying a 60,000 square foot house lot to Gary Larrivee.

In April 1987 the brother commenced the present action against his sister, claiming that the sister had orally agreed to convey to him her entire interest in the inherited real estate in return for the conveyance of the house lot to Gary Larrivee. In the nonjury trial held in October 1988, the Superior Court found for the sister because the brother had failed to carry his burden of proof on the alleged oral contract. The brother does not appeal that ruling. The sole issue on appeal arises from the brother's claim for reimbursement for half of the property taxes he paid in the twelve years 1976–1987, that half amounting to $3,029.91. The brother asserted this claim for reimbursement for the first time in May 1988 by filing an amended complaint in this action against his sister, some 13 months after he had filed his original complaint and 13 years after the brother and sister had inherited the real estate as tenants in common. The Superior Court found as a fact that until he filed the amended complaint the brother had never asked the sister to pay any part of the property taxes. On the reimbursement claim, the Superior Court held for the sister on the ground that the brother had made a completed gift to the sister of her half of the taxes. The brother made no post-judgment motions for additional findings or for modification of the judgment, but did take a timely appeal to this court.

It is hornbook law that an effective *inter vivos* gift requires three elements: (1) donative intent; (2) delivery with intent to surrender all present and future dominion over the property; and (3) acceptance by the donee. *See Rose v. Osborne,* 133 Me. 497, 500–01, 180 A. 315, 317 (1935); *Restatement (Second) of Property* § 31.1 (Tent. Draft No. 11, 1988).[2] Of the three elements, only donative intent is put in issue here. While we recognize that another factfinder could have arrived at a conclusion different from that of the Superior Court, the court's finding that the brother did have such donative intent is fully supported by the evidence. *See Smith v. Tonge,* 377 A.2d 109, 111 (Me. 1977).

As the Superior Court found, the brother was "proud" and "unbending" in his view of the real estate as being his own and in acting in all ways accordingly, despite the fact that he must have known the true state of the title after having been assisted by counsel in administering his father's estate. He purposely did not make his sister aware of the tax bills, and by his conduct steadily evidenced his intention to relieve her of any burden for the taxes or other expenses on the property. At the same time, his sister did not know of her interest in the real estate, and *a fortiori* did not know of any obligation that she had to pay the taxes.

The parties enjoyed a close relationship, living near each other and visiting each other regularly. *See Restatement (Second) of Property* § 31.1 comment d (Tent. Draft No. 11, 1988) ("The relationship of the parties involved may indicate that a gift from one to the other would be a normal expectation and if so, this circumstance contributes to the finding of an intent to make a gift"). The brother continued to occupy the premises as his own, paying no rent and making no accounting

**2.** The brother argues for the first time on appeal that the burden was on the sister to establish the elements of a completed gift by clear and convincing evidence. *See Gledhill v. McCoombs,* 110 Me. 341, 344, 86 A. 247, 248 (1913). *See also Taylor v. Commissioner of Mental Health and Mental Retardation,* 481 A.2d 139, 149 (Me. 1984). The brother made no contention to the Superior Court regarding the appropriate standard of proof and thus he has not preserved the issue for appellate review. *See Graybar Elec. Co. v. Sawyer,* 485 A.2d 1384, 1388 (Me.1985). The record before the Superior Court, however, would have fully justified it in finding the elements of a completed gift by that standard.

to his sister for either receipts from or expenditures on the property. In these circumstances the Superior Court could reasonably infer that as part of treating the property as his own in all respects, the brother assumed the obligation of his sister to the town for half of the taxes. *See Tuttle v. Merrow*, 109 Me. 347, 349, 84 A. 463, 464 (1912) ("The circumstances, the conditions, and the probabilities speak, as well as the witness, and sometimes speak with great effect").

Whatever may have been the brother's right under either 36 M.R.S.A. § 559 (Supp. 1988) or the doctrine of equitable contribution to recoup one half of the taxes from the sister, *see Bragdon v. Worthley*, 155 Me. 284, 153 A.2d 627 (1959), the Superior Court was justified in concluding that any such right had been intentionally waived by the brother for each of the tax years 1976 through 1987. Since, as the Superior Court implicitly found with adequate support in the record, the brother possessed the necessary donative intent at the time he paid each of the annual tax bills during the period of friendly relations between the siblings, he completed a gift to his sister at each of those times. A change of mind by the donor in 1988 cannot undo those completed gifts. *See Restatement (Second) of Property* § 31.1 comment d, illustration 11 (Tent. Draft No. 11, 1988).

The entry is:

Judgment affirmed.

All concurring.