STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-14-222

JACOB HOFFMAN, et al.,

Plaintiffs

v.

CAREY GOLTZ, et al.,

Defendants

STATE OF MAINE
Cumberland ss. Clerk's Office

MAR 0 4 2016

RECEIVED

ORDER

Before the court are motions by plaintiff Jacob and Monique Hoffman for partial summary judgment. In those motions, the Hoffmans are seeking summary judgment dismissing the claims for emotional distress, punitive damages, lost profits and lost business opportunities sought by defendants Carey Goltz, Timothy Cheney, and Design Concepts and Contracting Inc. in their counterclaim.

1. Summary Judgment

Summary judgment should be granted if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. In considering a motion for summary judgment, the court is required to consider only the portions of the record referred to and the material facts set forth in the parties' Rule 56(h) statements. *E.g., Johnson v. McNeil*, 2002 ME 99 ¶ 8, 800 A.2d 702. The facts must be considered in the light most favorable to the non-moving party. *Id.* Thus, for purposes of summary judgment, any factual disputes must be resolved against the movant. Nevertheless, when the facts offered by a party in opposition to summary judgment would not, if offered at trial, be sufficient to withstand a motion for judgment as a matter of law, summary judgment should be granted. *Rodrigue v. Rodrigue*, 1997 ME 99 ¶ 8, 694 A.2d 924.

In this case the Hoffmans base their motion for partial summary judgment on the deposition testimony of Goltz and Cheney, contending that based on that testimony Goltz and Cheney have not demonstrated that there is a disputed issue for trial on their counterclaim for intentional infliction of emotional distress or on their counterclaim for emotional distress damages arising from their legal malpractice and fiduciary duty claims. They also contend that defendants have not raised a disputed issue for trial on their counterclaim for punitive damages and that defendants' counterclaim for damages based on lost business opportunities should be dismissed based on a failure to respond to discovery.[1]

Defendants argue that the motion should be judged according to the standard applicable to a motion to dismiss. To the extent that the court can determine whether defendants' claim for emotional distress damages and for punitive damages raise disputed issues for trial based on their deposition testimony and on the affidavits defendants have submitted, the court will apply the usual summary judgment standard articulated above.

For their part, the Hoffmans argue that defendants' affidavits in opposition to the motion for summary judgment should not be considered because they consist of improper legal argument, statements that are conclusory, and statements not based on personal knowledge. The Hoffmans are correct to some extent. *See, e.g.,* Goltz Affidavit ¶¶ 16, 24, 27. Moreover, Defendants' Additional Statement of Material Facts (Defendants' SAMF) is also unnecessarily repetitive. *See, e.g.,* Defendants' SAMF ¶¶ 7, 8, 29, 44-45, 48. Nevertheless, disregarding repetitive assertions and any conclusory or inadmissible material in their opposing affidavits, defendants have presented evidence from which the court can determine whether there are genuine factual disputes for trial on the issues that are the subjects of the Hoffmans' motions.

---

[1] The counterclaim asserted by defendants does not differentiate between the damages sought by Goltz and Cheney individually and the damages sought by defendant Design Concepts and Consulting Inc. Since corporations cannot experience emotional distress, the court will address the emotional distress claims of Goltz and Cheney individually. The lost business opportunity claim appears to be asserted either by Goltz or by Design Concepts, but Goltz does not distinguish between the two in her deposition testimony.

2

In filing the instant motion limited to certain damage claims, the Hoffmans effectively acknowledge that there are disputed issues for trial in this case relating to renovation work by Goltz and/or Design Concepts on a residence owned by the Hoffmans in Yarmouth. Those disputed issues include but not necessarily limited to (1) whether Goltz and Design Concepts came in over budget, overbilled, or performed work that was defective in certain respects; (2) whether Jacob Hoffman had an attorney client relationship with defendants at the time the renovation work was contracted for and performed;[2] (3) whether Jacob Hoffman used confidential information he gained in the course of an attorney-client relationship against present or former clients; (4) whether the Hoffmans declined to pay the final invoice submitted by Goltz and Design Concepts in order to take advantage of their financial situation; and (5) whether Jacob Hoffman berated and intimidated Goltz.

This motion is addressed solely to whether the defendants can recover damages for emotional distress, punitive damages, and lost profits or other damages based on lost business opportunities if they prevail on their counterclaims. In deciding this issue, the court has to accept defendants' factual assertions – but not their conclusory contentions – for purposes of summary judgment and determine whether there are disputed issues for trial as to those damage claims or whether the Hoffmans are entitled to judgment dismissing those damage claims as a matter of law.

## 2. Intentional Infliction of Emotional Distress

The first issue is whether Goltz and/or Cheney have demonstrated that there are disputed issues for trial on their claim for intentional infliction of emotional distress.[3] To proceed on a

---

[2] It is not disputed that Jacob Hoffman had done some legal work for defendants. What is disputed is whether the attorney-client relationship continued to exist at the time the renovation work was contracted and performed. If there was a continuing relationship, that will raise legal issues relating to the responsibilities of a lawyer to his client when the lawyer and the client also have a separate contract for the client to perform renovation work on a residence owned by the lawyer. Those issues are not presented by the motions now before the court.

[3] Count VIII of the counterclaim seeks damages for emotional distress and does not specify whether defendants are asserting a claim of intentional infliction of emotional distress (IIED) or are simply

3

claim of intentional infliction of emotional distress, a plaintiff must demonstrate that he or she was subjected to emotional distress that was so severe that "no reasonable person could be expected to endure it." *Curtis v. Porter*, 2001 ME 158 ¶ 10. Whether sufficiently severe emotional distress can be found based on the evidence is an issue for the court to determine in the first instance. Restatement (Second) of Torts § 46, comment j.

In this case the evidence in the summary judgment record – the affidavits and deposition testimony of Goltz and Cheney – simply do not raise a disputed issue for trial on whether the distress experienced by Goltz[4] was the kind of distress that no reasonable person could have been expected to endure. *See Schelling v. Lindell,* 2008 ME 59 ¶¶ 24-26, 942 A.2d 1226; *Culbert v. Sampson's Supermarkets*, 444 A.2d 433, 437 (Me. 1982). The distress experienced when a property owner (even if the property owner is the contractor's present or former attorney) withholds payment for work in the course of a construction dispute does not fall into that category. Nor does being berated by the property owner to such an extent that the contractor is reduced to tears.

In addition, recovery on a claim for intentional infliction of emotional distress requires proof of "conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community." Restatement (Second) of Torts § 46, comment d. The issue of whether alleged conduct is sufficiently extreme or outrageous to meet the above standard is an issue for the court to determine in the first instance. *Champagne v. Mid-Maine Medical Center*, 1998 ME 87 ¶16, 711 A.2d 842, 847; *Gray v. State of Maine*, 624 A.2d 479, 484 (Me. 1993).

seeking damages for emotional distress on their claims of legal malpractice and breach of fiduciary duty. From their opposition papers to the instant motion, it appears that defendants are asserting an IIED claim and are also seeking emotional distress damages on their malpractice and fiduciary duty claims. The availability of emotional distress damages on defendants' legal malpractice and fiduciary duty claims is addressed below at pp. 5-8.

[4] Although Goltz makes the conclusory statement that she was subjected to "severe" emotional distress, the court is not bound by that label and must look to the factual evidence in the summary judgment record. For his part, Cheney does not allege that he suffered severe emotional distress but only that he had to deal with the stress placed on Goltz. Cheney Dep. 24.

4

In this instance, the Hoffmans' alleged conduct, accepted as true for purposes of this motion – and independent of any responsibility that Jacob Hoffman may have owed to defendants as their attorney – amounts to refusing to pay Goltz and Design Concepts for work that they performed and berating Goltz in an attempt to bully and intimidate her. This conduct, if proven, would be unfair and wrongful, but it was not "atrocious and utterly intolerable in a civilized community" and does not meet the "extreme and outrageous" standard required to proceed to trial on a claim for intentional infliction of emotional distress.

The Law Court has ruled that in appropriate cases summary judgment may be granted dismissing claims for intentional infliction of emotional distress if the court concludes that the alleged conduct is not sufficiently "extreme and outrageous" as a matter of law. *See Barnes v. Zappia*, 658 A.2d 1086, 1090 (Me. 1995); *Gray v. State of Maine*, 624 A.2d at 484 (neglect or refusal by caseworker to interview treating physician and caseworker's misrepresentation of the views of two consulting professionals not sufficiently extreme and outrageous); *Staples v. Bangor Hydro-Electric Co.*, 561 A.2d 499, 501 (Me. 1989) (humiliation of plaintiff at staff meetings and demotion without cause not sufficiently extreme and outrageous).

Accordingly, the Hoffmans are entitled to summary judgment to the extent that defendants are asserting a claim for intentional infliction of emotional distress independent of their claim that Jacob Hoffman committed legal malpractice and violated a fiduciary duty.


3. Emotional Distress Claim Based on Legal Malpractice and Fiduciary Duty Claims

That brings the court to the question whether Goltz or Cheney may be entitled to damages for emotional distress against Jacob Hoffman if they prevail on their claims for legal malpractice and breach of fiduciary duty. Those claims, although pled separately, are really combined because both the legal malpractice and fiduciary duty claims are based on the theory

5

that Jacob Hoffman took advantage of defendants in violation of his duty of loyalty to them as their lawyer or former lawyer.[5]

Goltz makes a passing attempt to argue that there was a fiduciary duty independent of the attorney client relationship. *See* Goltz Affidavit ¶ 17. However, independent of the attorney-client relationship, the court does not agree that she has demonstrated the existence of a disputed issue for trial as to whether a fiduciary relationship existed based on the particular facts in this case. For such a fiduciary relationship to exist, there must be the actual placing of trust or confidence by one party and a great disparity of position and influence between the parties. *See Stewart v. Machias Savings Bank*, 2000 ME 207 ¶ 10, 762 A.2d 44. To establish a great disparity of position and influence, a party must demonstrate diminished emotional or physical capacity or show that she was in such a vulnerable position that she let down all guards and defenses. *Oceanic Inn Inc. v. Sloan's Cove LLC*, 2016 ME 34 ¶ 18; *Stewart,* 2000 ME 207 ¶¶ 11-12. Contending that a great disparity of position existed based solely on the assertion that Goltz was an inexperienced small business owner while Hoffman was an experienced attorney and property owner (Goltz Affidavit ¶ 17) is insufficient as a matter of law.

As to whether Goltz and Cheney are entitled to pursue emotional distress damages based on their claim that Hoffman breached his fiduciary duty of loyalty as their attorney, Law Court cases suggest that, in cases brought by clients against their lawyers, damages for emotional distress are available when the emotional distress is "severe" and when the attorney's conduct is "egregious." *Garland v. Roy*, 2008 ME 86 ¶ 24, 976 A.2d 940. In this case, as discussed above, the emotional distress experienced by Goltz, as outlined in her deposition and affidavit, does not qualify as "severe." *Compare Burton v. Merrill*, 612 A.2d 862, 865 (Me. 1992) (harm to reputation and deterioration of plaintiff's marriage). As a result, her claims for emotional distress claims based on legal malpractice and breach of loyalty fail as a matter of law.

---

[5] Even when an attorney-client relationship has ended, lawyers owe certain duties of loyalty to former clients, most notably the duty not to use confidential information obtained during the attorney-client relationship.

6

In the alternative, accepting Goltz and Cheney's evidence as to Hoffman's alleged transgressions for purposes of summary judgment, those transgressions do not qualify as "egregious" within the meaning of the *Garland* decision. First, Goltz and Cheney assert that Hoffman was aware from representing them that they had discounted an earlier bill and that based on that knowledge the Hoffmans had declined to pay Goltz's final invoice. Defendants' SAMF ¶¶ 30, 31, 44, 45, 48. Withholding funds once a construction dispute has arisen is something that occurs in almost every case. Whether or not Hoffman was their attorney, that cannot form the basis for a finding of egregious misbehavior.

Defendants also contend that Goltz and Design Concepts requested Hoffman to prepare construction contracts, that he neglected to do that, and that he sought to use the absence of such contracts to their disadvantage in this dispute. Even assuming that this is true for purposes of summary judgment, this cannot be found to be egregious in the absence of any evidence that Goltz and Design Concepts have suffered or will suffer any financial harm as a result of the absence of the requested construction contracts. The Hoffmans have dropped their Home Construction Contract Act claim and Goltz and Design Concepts have not offered any evidence that they have been subjected to any financial harm as a result of Hoffman's alleged failure to prepare appropriate construction contracts.

Finally, Goltz and Cheney contend that Hoffman became aware while serving as their attorney that they were in a relationship and that Hoffman sued Cheney to put pressure on Goltz even though there was no legal basis for a claim against Cheney.[6] Defendants' SAMF ¶¶ 38-39, 43. However, Goltz and Cheney do not allege that their relationship was confidential and was not

---

[6] Cheney asserts in his affidavit that he is not an officer, shareholder, or employee of Design Concepts. He also asserts that on the renovation work that led to the lawsuit in this case neither he nor Design Concepts overbilled, went over budget, or performed defective work. Cheney Affidavit ¶ 14. Although it may be questioned how he can make the latter statement if he had no involvement in the renovation work, the court will assume for purposes of summary judgment that he had no such involvement. To the extent the Hoffmans have brought a groundless lawsuit against Cheney, however, he is not entitled to seek damages for emotional distress and his remedy – if he prevails in this action – would be a suit for malicious prosecution. *See Davis v. Currier*, 1997 ME 199 ¶ 6, 704 A.2d 1207.

7

known to anyone but their attorney. Hoffman's knowledge of a publicly known relationship between Goltz and Cheney cannot form the basis for a claim of disloyalty.

In sum, the instances in which defendants contend that Hoffman violated his duty of loyalty as their attorney, accepting the facts asserted by defendants as true, do not rise to the level of egregiousness that would justify allowing defendants to pursue damages for emotional distress. In *Garland v. Roy*, 2008 ME 86 ¶ 27, the Law Court affirmed the trial court's decision that Roy was entitled to judgment as a matter of law dismissing the Garlands' claim for emotional distress damages because the Garlands had not demonstrated egregious behavior. For the same reason, the Hoffmans are entitled to summary judgment dismissing defendants' emotional distress claims in this case.


## 4. Punitive Damage Claims

Defendants have offered no response to the Hoffmans' argument that the punitive damages claim should be dismissed, and the court therefore concludes that they are not opposing partial summary judgment with respect to punitive damages.


## 5. Economic Damages – Lost Profits Claim

On the Hoffmans' motion for summary judgment on the claim by Goltz and/or Design Concepts that they lost customers and business opportunities as a result of Hoffman's tortious conduct – essentially a claim for lost profits – the court reaches a different conclusion. The Hoffmans argue that they are entitled to summary judgment because defendants have not responded to certain discovery requests aimed at obtaining evidence relevant to the allegation of lost profits, lost customers, and other lost business opportunities. It may be that any evidence that is offered by defendants with respect to lost profits will be too speculative and conjectural to allow recovery. *See Rutland v. Mullen*, 2002 ME 98 ¶¶ 22-23, 798 A.2d 1104.[7] However, that

---

[7] In *Snow v. Villacci,* 2000 ME 127 ¶¶ 16, 754 A.2d 360, the Law Court noted that recovery of tort damages for a lost earning opportunity requires proof that the earning opportunity was real and not merely hoped-for, that the opportunity was specifically available to the plaintiff as opposed to the public

8

determination cannot be made simply because defendants have objected to certain of the Hoffmans' requests for production of documents.

The Hoffmans have not sought to compel production of the discovery they have sought. If they did so, and if the court ordered production, and if defendants then declined to produce the information in question, the Hoffmans might be entitled to an order precluding the defendants from seeking certain damages. Alternatively, once the defendants have offered evidence at trial on their claim for lost profits, the Hoffmans will entitled to challenge that evidence on the ground that the claim is too speculative. However, based on the summary judgment record and on the defendants' objections to the Hoffmans' document requests, the court cannot grant summary judgment on defendants' claim for lost profits.

In reviewing the file, the court sees that there is a request for a Rule 26(g) discovery conference from defendants' counsel. Such a conference shall be scheduled. To the extent that the Hoffmans are seeking to compel responses to certain of their discovery requests and counsel for the Hoffmans have unsuccessfully conferred with opposing counsel in a good faith attempt to resolve those requests, those requests may be considered at the Rule 26(g) conference as well.

The entry shall be:

Plaintiffs' motion for partial summary judgment is granted with respect to defendants' counterclaim for emotional distress damages and for punitive damages. Plaintiff's motion for partial summary judgment is denied with respect to defendants' counterclaim for lost business opportunities and lost profits. The Clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: March 4 , 2016

Thomas D. Warren
Justice, Superior Court

---

generally, that the plaintiff was positioned to take advantage of the opportunity, that the potential income from the opportunity was measurable and demonstrable, and that the wrongdoers' conduct was a legal cause of the plaintiff's inability to pursue the opportunity.